**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JORDAN E. LUBIN, Chapter 7 Trustee of Integrity Bancshares, Inc., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:10-CV-00874-RWS |
| v. | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Integrity Bank of Alpharetta, Georgia, | : | |
| Defendant. | : | |

**ORDER**

This case is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, Failure to State a Claim Pursuant to Fed. R. Civ. P 12(b)(6) [13], Plaintiff's Motion for Hearing on Defendant's Motion to Dismiss [17], and Defendant's Motion to Strike Plaintiff's Filing of Supplemental Material [25]. After reviewing the entire record, the Court enters the following order.

As an initial matter, the Court does not find a hearing on Defendant's Motion [13] necessary, so Plaintiff's Motion for Hearing [17] is **DENIED**.

AO 72A
(Rev.8/82)

## Background

Jordan E. Lubin, the Chapter 7 Trustee for Integrity Bancshares ("Plaintiff" or "Trustee") brought this action for declaratory judgment, accounting, and turnover, against the Federal Deposit Insurance Corporation, as Receiver for Integrity Bank ("FDIC" or "Defendant"). (Complaint [1-1] at ¶ 11-14). Integrity Bancshares, Inc. ("Debtor" or "Bancshares"), the debtor in bankruptcy, is a Georgia bank holding company and parent of Integrity Bank ("Bank"). ( Id. at ¶ 2). On August 29, 2008, Integrity Bank was closed by the Georgia Department of Banking and Finance and placed into receivership with the Federal Deposit Insurance Corporation as receiver ("FDIC-R"). (Id. at ¶ 3). Following the close of Integrity Bank, Bancshares filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Northern District of Georgia on October 13, 2008. (Id. at ¶ 4). The Plaintiff, Jordan E. Lubin, became the permanent Chapter 7 Trustee for Bancshares on November 18, 2008. (Id. at ¶ 1).

The present action concerns tax refunds that were issued to Bancshares prior to the filing of the Chapter 7 case and were transmitted to the FDIC-R, and tax refunds applied for, or to be applied for, but not yet issued. (Id. at ¶ 11, 14). Bancshares' rights with respect to the tax refunds are memorialized in a Tax

AO 72A
(Rev.8/82)

Allocation Agreement entered into by Bancshares and the Bank (the "Tax Agreement"). (Id. at ¶ 12). On September 8, 2008, the United States Treasury issued payments of $3,956,947 and $5,909,199 to Bancshares for the 2007 federal tax refunds (the "2007 Federal Refunds"). (Id. at ¶ 34). On September 15, 2008, the Georgia Department of Revenue issued a payment of $263,000 for the 2007 estimated tax refund (the "2007 Georgia Refund"). (Id. at ¶ 35). The FDIC-R took possession of the 2007 Federal Refunds and the 2007 Georgia Refund. (Id. at ¶ 34, 35). "The Trustee further anticipates that the Debtor may seek additional federal and state income tax refunds for the Group based upon an allowed carryback of unused 2007 and 2008 net operating losses to offset tax liabilities paid by the Group for tax years prior to 2005 ("Additional Carryback Refunds")." (Id. at ¶ 37).

Plaintiff's complaint sets forth four counts. Count I was brought under the Declaratory Judgment Act, seeking a declaration that the Debtor has a right to receive the 2007 Federal Refunds, the 2007 Georgia Refund, and any Additional Carryback Refunds applied for an issued in the future (collectively the "Refunds"). (Id. at ¶ 44). Count II seeks an accounting of all tax payments between Bancshares and the Bank for tax years 2000 through 2008. (Id. at ¶ 55). As an alternative to its claims in Count I that the Refunds are property of

AO 72A
(Rev.8/82)

the bankruptcy estate, the Trustee in Count II alleges that "due to the Bank's failure to pay all taxes due for tax years 2005 and 2006, and possibly other tax years, some portion of the Tax Refunds constitute property of the Debtor's bankruptcy estate." (Id. at 50). Counts III and IV request a turnover of all of the tax refunds obtained by the FDIC-R and any other funds received by the FDIC-R, within the one year prior to Bancshares filing for bankruptcy, for the benefit of Bancshares bankruptcy estate. (Id. at ¶ 60, 68).

Defendant claims that Plaintiff is barred from bringing the present action because he failed to exhaust the required administrative process. Specifically, Defendant alleges that Plaintiff did not comply with the procedure outlined in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Defendant asserts that FIRREA establishes an administrative claims process for bringing claims against the FDIC-R and that the Court lacks subject matter jurisdiction if the mandatory process is not followed. (Memorandum in Support of the FDIC's Motion to Dismiss ("Def's Memo"), Dkt. [13-1] at p. 9-11). Defendant states that they sent a letter to Bancshares on September 9, 2008, that instructed them that failure to file a claim by December 4, 2008 (the "Bar Date") would result in a disallowance of their claim. (Id. at p. 14).

Plaintiff does not deny that he did not comply with the administrative claims process provided in FIRREA, he instead asserts that FIRREA's review procedures do not apply to the present case. (Plaintiff's Response to Defendant's Motion to Dismiss ("Pl's Response"), Dkt. [15] at p. 1, 9). First, Plaintiff claims that FIRREA is only directed at creditor claims of receivership assets. (Id. at p. 11). The Plaintiff asserts that the tax refunds sought are property of the bankruptcy estate and not of the receivership. (Id.) Next, the Plaintiff asserts that Bancshares did not receive proper notice or have a meaningful opportunity for administrative review. (Id. at p. 14). Further the Plaintiff claims that on March 22, 2010, the Trustee requested an administrative review by the FDIC-R, and that request was refused. (Id. at p. 17). Thus, Plaintiff alleges that he is not barred by FIRREA's administrative process and that the Tax Agreement provides that Bancshares is the owner of the tax refunds. (Id. at p. 18).

The Court now examines the sufficiency of Plaintiff's claims.

## Discussion

In order to determine whether the Trustee's Complaint should be dismissed, the Court will analyze Plaintiff's claims in two parts. First, the Court will examine the viability of Plaintiff's claims with respect to tax refund

AO 72A
(Rev.8/82)

payments already in the possession of the FDIC-R. Second, the Court will address Plaintiff's claims for declaratory judgment and accounting for tax refunds not yet in the possession of the FDIC-R.

As to the letter [24-1] filed by Plaintiff as supplemental material, it was drafted and sent after the close of briefing on Defendant's Motion to Dismiss [13] and will be considered by the Court as supplemental evidence in evaluating that Motion. Therefore, Defendant's Motion to Strike [25] is **DENIED**.

## I. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when

AO 72A
(Rev.8/82)

the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**II. Refunds in the Possession of the FDIC-R**

Counts III and IV of Plaintiff's complaint seek turnover and preference of tax refunds received by the FDIC, for the benefit of Bancshare's bankruptcy estate. (Id. at ¶ 56-68). Defendant asserts that these claims are barred by Plaintiff's failure to comply with the administrative claims process set forth in FIRREA. Defendant states that this failure to exhaust the administrative process deprives this Court of jurisdiction. (Reply in Support of Motion to Dismiss ("Def's Reply"), Dkt. [23] at p. 5). The applicable provision of FIRREA, entitled "Limitation on judicial review" provides that,

AO 72A
(Rev.8/82)

> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver;
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D)(i).

The plain language of this section "divests the district court of jurisdiction over requests for relief which can be characterized as: (1) claims for payment from assets of any depository institution for which the [FDIC] has been appointed a receiver; (2) actions for payment from assets of such depository institutions; (3) actions seeking a determination of rights with respect to the assets of such depository institutions and; (4) a claim relating to any act or omission of such institution or the [FDIC] as receiver." Am. First Fed., Inc., v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 (11th Cir. 1999). While the term "assets" is not defined in the statute, Black's Law Dictionary defines "asset" as:

> 1. An item that is owned and has value. 2. The entries on a balance sheet showing the items of property owned, including cash, inventory, equipment, real estate, accounts receivable, and goodwill. 3. All the property of a person available for paying debts or for distribution.

AO 72A
(Rev.8/82)

Black's Law Dictionary (9th ed. 2009).  Any tax refunds, or other funds,

currently in the possession of the FDIC-R are rightfully considered assets of the

FDIC-R, and are subject to FIRREA's jurisdictional bar.  Further, any claim for

payment or an action seeking a determination of rights from the FDIC-R is

subject to the administrative process, regardless of the status of the party

seeking payment.  See Nat' Union Fire Ins. Co., v. RTC, 28 F.3d 376, 389 (3rd

Cir. 1994) (finding that the term "any action" in § 1821(d)(13)(D)(i) "includes

actions by debtors as well as creditors, and is not limited to actions asserting a

right to payment"); See also id. at 388 (stating that the jurisdictional bar

contained in the plain language of § 1821(d)(13)(D) is broad and that "FIRREA

was in fact passed to give the receiver extraordinary powers").

Furthermore, the Trustee's claim that he did not receive proper notice is

without merit.  Even if neither the Trustee nor Bancshares remembers receiving

notice, they were aware of the appointment of the receiver before the Bar Date.

(Aff. Lubin, Dkt.[15-2] at ¶ 11 (stating that at a creditor meeting held on

November 18, 2008, Suzanne Long, a corporate representative of Bancshares,

noted that the Tax Agreement existed, but may be in the possession of the

FDIC)); RTC Mortgage Trust v.Haith, 133 F.3d 574, 578 (8th Cir. 1998)

(internal quotations omitted) (finding that "failure to provide proper notice does

not relieve the claimant of the obligation to exhaust administrative remedies, because . . . the only exception to the strict requirement of exhaustion of remedies, [is] where the claimant does not receive notice of the appointment of the receiver in time to file his claim"); See also 12 U.S.C. § 1821(d)(5)(c)(ii) (stating that there is only an exception for failure to bring a claim by the Bar Date if "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and such claim is filed in time to permit payment of such claim"). Finally, the Trustee's claim that the FDIC-R refused to provide administrative review must fail because the Trustee first requested administrative review on March 22, 2010, well past the Bar Date of December 4, 2008. The FDIC-R was under no duty to review the late claim and the statute even provides that "claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i).

Thus, the administrative review process outlined in FIRREA applies to Plaintiff's claims for turnover and preference of tax refunds currently in the possession of the FDIC. Plaintiff was aware of the appointment of the receiver and failed to bring his claims for payment and accounting by the Bar Date. The jurisdictional bar provided for in 12 U.S.C. § 1821(d)(13)(D)(i) prevents

AO 72A
(Rev.8/82)

Plaintiff from bringing his claim in this Court. Therefore, Counts III and IV of Plaintiff's Complaint are **DISMISSED**. To the extent Count I seeks a declaration that Refunds already in the possession of the FDIC are property of the bankruptcy estate, it is **DISMISSED**.

**III. Refunds not in Possession of the FDIC-R**

In Count I of the Plaintiff's complaint, the Trustee seeks a declaratory judgment with regards to the 2007 Federal Refunds, 2007 Georgia Refund, and any additional refunds applied for, and to be issued in the future. (Complaint [1-1] at ¶ 44). The Declaratory Judgment Act provides: "in a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such determination, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order to bring a declaratory judgment action an "actual controversy" must exist. Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995). The issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct.

510, 85 L. Ed. 826 (1941). There appear to be tax refunds outstanding, but for the reasons set forth below there does not appear to be a substantial controversy as to which party is entitled to the Additional Carryback Refunds.

As laid out in the discussion above, to the extent that Plaintiff seeks a declaratory judgment that he is entitled to funds already in the possession of the FDIC-R, that claim is barred by FIRREA. The Court will now discuss the Plaintiff's claims for declaratory judgment with respect to any Additional Carryback Refunds.

Assuming, without deciding, that the Tax Agreement entered into between the Bank and Bancshares has not been rejected pursuant to 11 U.S.C. § 365(d)(1), the Court will determine whether the relationship entered into between the Bank and Bancshares was that of agency or debtor-creditor. Several courts have found that the parent of a consolidated group is an agent for the remainder of the group for the purposes of collecting taxes and refunds. See e.g. In re Bob Richards Crysler-Plymouth Corp., 473 F.2d 262, 265 (9th Cir. 1973). As a result of the agency relationship, the parent corporation holds the money owing to the subsidiaries in trust for them. Id. "The fact that the group remitted their taxable income to Bancshares each year so that it could make a consolidated tax payment and receive a consolidated return does not imply an

AO 72A
(Rev.8/82)

allocation scheme," but is "merely a procedural device relied upon by the IRS." Capital Bancshares, Inc. v. FDIC, 957 F.2d 203, 207 (5th Cir. 1992). However, the Tax Agreement does explicitly set forth an allocation scheme for the payment of taxes.[1] The agreement makes the Bank responsible for any tax liability owed due to its earnings and entitles the Bank to a refund in the amount it would be due if it filed a tax return as a separate entity.

While the Trustee argues that the Tax Agreement created a debtor-creditor relationship, after examining the Tax Agreement as a whole, this Court finds that the language does not override the presumptive principal-agent relationship. The plain language of the Tax Agreement specifically intends an agency relationship. The Tax Agreement states in pertinent part:

> If as a result of filing a consolidated return, a tax benefit arises from a taxable loss incurred by the Bank, then [Bancshares] agrees to pay in cash to the Bank the amount of such benefit.
>
> If the Bank incurs a loss for tax purposes it should record a current income tax benefit and receive a refund from [Bancshares] in an amount no less than the amount the Bank would have been entitled to receive as a separate entity. The refund should be made to the Bank within a reasonable period following the date the Bank would have filed its own return, regardless of whether [Bancshares] is receiving a refund.

---

[1] "Corporations can by agreement allocate tax refunds which result from the filing of a consolidated tax return." In re Florida Park Banks, Inc., 110 B.R. 986, 988 (Bankr. M.D. Fla. 1990).

AO 72A
(Rev.8/82)

> . . . .
>
> *If the Holding Company receives a tax refund from a taxing authority, these funds are obtained as agent of the consolidated group on behalf of the individual group members. This allocation agreement as well as other corporate policies should not be intended to consider refunds attributable to the subsidiary banks, which are received by the Holding Company from the taxing authority, as the property of the Holding Company.*

(Tax Agreement, Dkt. [13-3] at ¶ 7 (emphasis added)). The court in In re BSD Bancorp, Inc., No. 94-1341-IEG (S.D. Cal. 1995), was tasked with interpreting a similar tax agreement. In that case, one question before the Court was "whether the terms of the tax allocation agreement expressly or impliedly override the Bob Richards[, 473 F.2d 262,] principal-agent relationship." Id. at 10. There the debtor argued that the language of the tax agreement that "[a]ny subsidiary incurring an annual loss on a tax basis that results in a tax benefit on the consolidated return shall be reimbursed in cash" indicates a debtor-creditor relationship was intended. Id. The district court examined the economic reality of the transaction and determined that the tax agreement strongly suggested an intent to maintain a principal-agent relationship. Id. at 9-10. In this action, the language of the Tax Agreement is clear that an agency relationship was intended, particularly when Bancshares "receives a tax refund from a taxing authority." (Dkt. [13-3] at ¶ 7). The economic reality of the arrangement

between Bancshares and the Bank suggests the same. Having examined Plaintiff's arguments that sections of the Tax Agreement, or the Agreement as a whole, establish that the parties' relationship should be considered to be one of debtor and creditor, the Court is not persuaded

Thus, to the extent that any tax refunds yet to be paid are attributable to losses sustained by the Bank, the Court finds that as a matter of law such refunds are property of the FDIC-R per the terms of the Tax Agreement. Plaintiff's Complaint does not allege that any Additional Carryback Refunds that may be issued are attributable to losses suffered by Bancshares, as opposed to the Bank, such that any portion of these refunds would belong to Bancshares pursuant to the Tax Agreement. Having failed to make any such allegation, the Complaint fails to state a claim that the Debtor is entitled to any portion of the Additional Carryback Refunds.[2] Therefore, Count I is **DISMISSED** as to any Additional Carryback Refunds.

---

[2] See Bob Richards, 473 F.2d 262, 265 (refusing parent corporation's contention it should be entitled to tax refund resulting from carryback of net operating loss because parent company paid no taxes nor incurred any losses during years in question and holding that parent corporation's receipt of refund was only in its "capacity as an agent for the consolidated group" and on theory of "unjust enrichment" parent corporation was not entitled to refund.).

AO 72A
(Rev.8/82)

**IV. Accounting**

Count II of Plaintiff's complaint seeks an accounting of

> (a) all tax payments and accounting between the Debtor and Bank for tax years 2000-2008, (b) all refunds or other payments received by the Bank or FDIC on behalf of the Bank, whether pursuant to the Tax Agreement or otherwise, relating to tax liabilities of the Group, and (c)a the use, allocation and/or disposition of such funds by the Bank or FDIC. Such accounting is necessary and required to determine what portion of the Tax Refunds constitutes property of the Debtor's bankruptcy estate that the Trustee is entitled to recover in this proceeding.

(Complaint [1-1] at ¶ 55). Count II states that "the Bank failed to pay its full share of taxes owed by and paid on behalf of the Group in accordance with the Tax Agreement." Assuming this is true, this is a claim relating to an act or omission of the Bank which has not been asserted through the administrative claims process mandated by FIRREA. The Court lacks jurisdiction over such a claim. See Am. First Fed., Inc., 198 F.3d at 1263 (noting that district court is divested of jurisdiction of "a claim relating to any act or omission of such [depository] institution"). Therefore, the Trustee is not entitled to an accounting on this basis. Because the Debtor has not alleged that any of the Additional Carryback Refunds result from losses sustained by Bancshares as opposed to the Bank, it has not alleged that it is entitled under the Tax Agreement to any of these refunds. Therefore, Plaintiff is not entitled to an

AO 72A
(Rev.8/82)

accounting on the basis of the Additional Carryback Refunds either. Count II of Plaintiff's Complaint is **DISMISSED**.

## Conclusion

For the aforementioned reasons Defendant's Motion to Dismiss [13] is **GRANTED** as to all counts, Plaintiff's Motion for Hearing on Defendant's Motion to Dismiss [17] is **DENIED**, and Defendant's Motion to Strike Plaintiff's Filing of Supplemental Material [25] is **DENIED**. Plaintiff's Motion for Partial Summary Judgment [29] is **DENIED as moot.** The Clerk is directed to close this action.

**SO ORDERED**, this _2nd__ day of March, 2011.

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)